IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-00209-01-CR-W-BP |
| ) | |
| ERIC T. RILEY, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Eric T. Riley's Motion to Suppress (doc #26). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On July 17, 2012, defendant Eric T. Riley was charged in a one-count indictment. The indictment charges that on January 21, 2012, defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year, possessed a Norinco, Model SKS, 7.62 x 39 caliber rifle and a Jimenez, Model J.S. Nine, 9mm pistol.

At a hearing held on November 22, 2016, the parties agreed that an evidentiary hearing was not necessary with respect to defendant's motion to suppress. (Tr. at 3) Government counsel offered without objection the search warrant that was signed at the state level (Government's Ex. 15) and the affidavit supporting that search warrant (Government's Ex. 16). (Tr. at 3) The Eighth Circuit Court of Appeals has held that "[w]hen the magistrate relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United

States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995)(quoting United States v. Leichtling, 684 F.2d 553, 555 (8th Cir. 1982), cert. denied, 459 U.S. 1201 (1983)). The motion will, therefore, be ruled based on the information contained within the four corners of the underlying affidavit.

## II. THE AFFIDAVIT

The Application for Search Warrant, given in support of a search warrant for 2803 Elmwood Avenue, Kansas City, Missouri, provides in part:

> On 01-12-2012, at approximately 1400 hours, a detective with the Kansas City Missouri Police Department, Street Crimes Unit, and a confidential informant responded to a gas station located at 8312 E. 23rd St., Kansas City, Jackson County, Missouri, to complete a narcotics transaction with a male known as "Red." The confidential informant knows "Red" to sell Cocaine Base in the Kansas City, Missouri area. During the course of the investigation, "Red" was identified as Eric T. Riley, black/male, 07-08-1980.
>
> Prior to arrival at the aforementioned location, the confidential informant contacted Mr. Riley utilizing phone number (816)438-1552, and asked if he could meet him/her. Mr. Riley told the confidential informant to respond to 8312 E. 23rd St. The detective handed the confidential informant twenty dollars of pre-recorded Street Crimes Unit buy money.
>
> Upon arrival at 3812 E. 23rd St., the confidential informant exited the undercover detective's vehicle and responded to a silver Pontiac, bearing Missouri license plate PJ3A3S, where the confidential informant made contact with Mr. Riley. The confidential informant told Mr. Riley he/she wanted "twenty," referring to twenty dollars in Cocaine Base. The confidential informant handed Mr. Riley twenty dollars in pre-recorded Street Crimes Unit buy money. Mr. Riley handed the confidential informant two pre-packaged beige, rock-like substances, purported to be Cocaine Base. The confidential informant told Mr. Riley he/she had someone with him/her, who would also like to purchase Cocaine Base from him at a later time. The confidential informant exited Mr. Riley's vehicle, came back to the detective's vehicle, and told the detective Mr. Riley wanted to meet him/her. The detective exited the undercover vehicle and responded to Mr. Riley's vehicle, where the confidential informant introduced the detective to Mr. Riley. The detective and the confidential informant responded back to the detective's vehicle, where the confidential informant immediately handed the detective the purchased substances. The detective and the confidential informant left the area. Immediately following the narcotics transaction, surveillance detectives followed Mr. Riley directly to 2803 Elmwood Ave., where detectives observed Mr. Riley enter the front door utilizing a key.
>
> The confidential informant, who has been proven reliable in the past, was searched both prior to and following the narcotics transaction for narcotics, narcotics paraphernalia,

2

weapons, and currency, with negative results.

The purchased substances, weighing approximately 0.4 grams, were field tested utilizing the Scott Reagent test kit. The substances tested positive for the presence of Cocaine, a Schedule II Controlled Substance. The substances were placed in the Unit vault, where they will be forwarded to the Regional Crime Lab for further analysis.

On 01-12-2012, at approximately 1430 hours, the detective responded to a gas station located at 1907 Jackson Ave., Kansas City, Jackson County, Missouri, to attempt a narcotics transaction with Mr. Riley.

Prior to arrival at the aforementioned location, the detective contacted Mr. Riley utilizing phone number (816)438-1552. The detective asked Mr. Riley if he could meet up with him/her again, referring to conducting another narcotics transaction with Mr. Riley for Cocaine Base. Mr. Riley told the detective to respond to 1907 Jackson Ave. Surveillance detectives observed Mr. Riley exit the front door of 2803 Elmwood and appear to lock it, utilizing a key. Surveillance detectives followed Mr. Riley to 1907 Jackson Ave.

Upon arrival at 1907 Jackson Ave., the detective contacted Mr. Riley and told him he/she was in the parking lot. Mr. Riley told the detective he was about to pull up, and advised the detective to follow him a few blocks north on Jackson Ave. The detective observed Mr. Riley pull into the parking lot, driving the silver Pontiac bearing Missouri license plate PJ3A3S, which was used in the previous narcotics transaction.

The detective followed Mr. Riley to the intersection of E. 11th St. and Spruce Ave., Kansas City, Jackson County, Missouri, where Mr. Riley pulled over to the curb. The detective exited his/her undercover vehicle and entered the passenger's side compartment of Mr. Riley's vehicle. The detective attempted to hand Mr. Riley twenty dollars in pre-recorded Street Crimes Unit buy money, in exchange for Cocaine Base. Mr. Riley asked the detective if he/she had a pipe, referring to narcotics paraphernalia used to smoke Cocaine Base. Mr. Riley stated, "I'm a business man and can't afford to go to jail over a twenty dollar bill." Mr. Riley went on to ask, "You're not a cop, are you?" The detective observed Mr. Riley holding a rolled cigarette containing a green, leafy substance, purported to be Marijuana. Mr. Riley attempted to hand the detective the rolled cigarette and told him/her to smoke it to prove he/she was not affiliated with the police. It is common for narcotics traffickers to ask new customers to ingest narcotics in front of them to prove they are not affiliated with the police. The detective also observed Mr. Riley to have a clear, plastic bag, which contained a green leafy substance, sitting in his lap. As a result of the detective's training and experience, the detective immediately recognized the substance to be Marijuana, a Schedule I Controlled Substance. The detective exited Mr. Riley's vehicle, as Mr. Riley refused to sell the detective narcotics after the detective declined to smoke narcotics in front of him. The detective left the area and surveillance was terminated.

3

A computer inquiry was conducted through the REJIS System on the address at 2803 Elwood Ave. Mr. Riley responds as providing 2803 Elmwood Ave as his place of residence on multiple occasions.

A computer check on Mr. Riley through the Tiburon System reveals on 03/27/2008, at approximately 0353 hours, patrol officers with the Kansas City Missouri Police Department, East Patrol Division, attempted to complete a car check in front of the address at 2803 Elmwood Ave. Mr. Riley was taken into custody by officers after resisting arrest. Officers located approximately two (2) grams of Cocaine Base and five (5) grams of Marijuana inside the vehicle driven by Mr. Riley.

It is requested **A NO KNOCK SEARCH WARRANT** be obtained due to the following circumstances:

A computer inquiry was conducted on Mr. Riley's criminal history. 2803 Elmwood Ave was listed as Mr. Riley's most current place of residence. Mr. Riley responds with seven felony convictions and has prior arrests for Possession of a Controlled Substance, Traffic in Drug/Attempt-2nd Degree, Unlawful Use of a Weapon, Obstructing an Officer, and Resisting. He also responds as Armed and Dangerous though [sic] the REJIS System.

Past experience related to narcotics investigations have revealed small quantities of narcotics can be easily disposed of prior to law enforcement officers entering the residence to execute search warrants. Based on the detective's training, experience, and participation in the investigation of and purchasing/seizure of controlled substance, it is common for drug traffickers to:

Maintain large amounts of United States currency on hand in order to finance their ongoing drug business;

Commonly have in their possession, either on their person, or at their residence and/or business, firearms, including, but not limited to: handguns, rifles, shotguns, and other weapons. These firearms are used to protect and secure drug traffickers property, which may include, but are not limited to: drugs, jewelry, drug paraphernalia, records, and United States currency. In this regard, courts have recognized weapons are tools of a drug trafficker's trade, and it is reasonably foreseeable that conspirators involved in a large-scale drug conspiracy will carry, possess, and use weapons;

Maintain books, records, sales, and/or purchase invoices, receipts, notes, ledgers, bank records, money orders, and/or documents relating to the transportation, substances, and/or records relating to the receipt and/or disposition of proceeds from the distribution of controlled substances;

Maintain telephone and address books on documents, which reflect names, addresses,

and/or telephone numbers of individuals associated with dealing in controlled substances;

Often maintain documents and records relating to the acquisition of assets, receipts, and disbursements of monies, location of bank accounts, safety deposit boxes, and storage facilities.

(Government's Ex. 16) The items to be searched for and seized were listed as:

Marijuana, a Schedule I Controlled Substance;

Cocaine, a Schedule II Controlled Substance;

Any firearms;

U.S. Currency, in close proximity to narcotics;

U.S. Currency – Pre-recorded Street Crimes Unit buy money;

Narcotics paraphernalia and any items used in the preparation, packaging and distribution of Marijuana and/or Cocaine;

Any papers, correspondence or documents related to drug trafficking and/or the disposition of moneys which evidence the proceeds from the illicit trafficking of drugs;

Indicia of occupancy, residency, ownership, management and/or control of the premises described above including, but not to utility and telephone bills, canceled envelopes and keys;

(Government's Exs. 15 and 16)

### III. DISCUSSION

Defendant Riley seeks to suppress all evidence seized[1] pursuant to the search warrant executed on January 21, 2012.[2] (Motion to Suppress (doc #26) at 1) In support of the motion, defendant argues the search warrant issued was not supported by probable cause. Specifically,

---

[1]Defendant advised that officers seized drug paraphernalia, firearms and ammunition when they executed the warrant. (Motion to Suppress (doc #26) at 2)

[2]The first page of the motion states that the search warrant was executed on January 21, 2016. However, on the second page of the motion, the date of execution is given as January 21, 2012. The Application for Search Warrant (Government's Ex. 16) and Search Warrant (Government's Ex. 15) were each dated January 17, 2012.

5

defendant argues:

> The information provided in the Application for Search Warrant is best characterized as "boilerplate" language supported by a "bare bones" recitation of facts insufficient to establish the requisite probable cause for search a warrant to be granted. …
>
> … In the Application for Search Warrant, the affiant provided a recitation of the facts … as they pertain to the controlled buy and attempted controlled buy. Neither the controlled buy nor the attempted buy occurred at the Defendant's residence, yet the residence was [the] subject of the search warrant. On neither occasion did the Defendant invite either the CI or the undercover officer to conduct a narcotics transaction at his residence. The Defendant made no statements to either the CI or undercover officer that would indicate the Defendant stored drugs or firearms in his residence. The police did not conduct any trash pulls, nor employ any other investigative techniques that resulted in the discovery of evidence of drug trafficking. Though both the CI and undercover officer were in extremely close proximity to the Defendant on January 12, 2012, neither observed the Defendant with any firearms. There was no "fair probability" that the items listed in the Application would be found at the Defendant's residence.
>
> Also in the Application, the affiant referenced law enforcement interaction with the Defendant that was alleged to have occurred on March 27, 2008 – *four years prior*.[3] The affiant stated that on that date, law enforcement officers were conducting a car check in front of 2803 Elmwood, Kansas City, Missouri, resulting in the Defendant's arrest. The affiant further alleged that 2 grams of cocaine base and 5 grams of marijuana were located in the car driven by the Defendant. The affiant did not state whether the arrest resulted in any conviction, did not provide a case number, nor did the affiant provide any details that would suggest the narcotics seized were intended for any purpose other than personal use. There certainly was no reference to the Defendant possessing any firearms or ammunition during the 2008 incident. Perhaps most important is the lack of any indication that the Defendant's residence was searched in connection with that incident. …

(Motion to Suppress (doc #26) at 2-4)

---

[3] While the Court does not find the inclusion of this dated incident necessary to the establishment of probable cause, the Court notes that where "the affidavit 'describes a continuing pattern of behavior,' and the older information corroborated more current reports linking the address to illegal activity, the affidavit was not stale 'when taken as a whole.'" United States v. Garcia-Hernandez, 682 F.3d 767, 772 (8th Cir. 2012)(quoting United States v. Palega, 556 F.3d 709, 715 (8th Cir. 2009)).

6

The Eighth Circuit Court of Appeals has set forth the following with respect to probable cause in a search warrant:

> "Probable cause to issue a search warrant exists when an affidavit ... in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." United States v. Davis, 471 F.3d 938, 946 (8th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 ... (1983)). The determination of probable cause is made after considering the totality of the circumstances. United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir. 2007). After a judge has issued a search warrant upon a finding of probable cause, "that finding deserves great deference." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)(citing Gates, 462 U.S. at 236 ...). Thus, when reviewing the sufficiency of the ... affidavit supporting a search warrant that was found by the issuing judge to provide probable cause, we give great deference to the issuing judge's finding. Id.

United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983).

On January 17, 2012, in the Circuit Court of Jackson County, Missouri, a judge was presented with the following facts: five days earlier, a confidential informant, accompanied by an undercover detective with the Kansas City, Missouri Police Department, purchased Cocaine Base from defendant Eric T. Riley using $20 in pre-recorded Street Crimes Unit buy money; the confidential informant told Riley that he/she had someone with him/her who would like to purchase Cocaine Base from Riley at a later time and Riley then asked to meet the undercover detective; immediately following the narcotics transaction between Riley and the confidential informant, surveillance detectives followed Riley to 2803 Elmwood Avenue, where detectives observed Riley enter the front door utilizing a key; approximately thirty minutes later, the undercover detective contacted Riley and another meeting was arranged to attempt a narcotics transaction; surveillance detectives observed Riley exit the front door of 2803 Elmwood Avenue

and appear to lock it, utilizing a key; the surveillance detectives followed Riley to the arranged meeting with the undercover detective; the undercover detective observed Riley to be in possession of marijuana; Riley refused to sell any narcotics to the undercover detective because the undercover detective refused to smoke marijuana in Riley's presence; a computer inquiry showed that Riley had provided 2803 Elmwood Avenue as his place of residence on multiple occasions; Riley had seven felony convictions and prior arrests for possession of a controlled substance, attempted trafficking in drugs-2nd degree, unlawful use of a weapon, obstructing an officer and resisting; and Riley responded as Armed and Dangerous through the REJIS System. Further, the applying detective averred that, based on the detective's experience relating to narcotics investigations, drug traffickers commonly keep large amounts of U.S. currency, firearms and records relating to the distribution of controlled substances at their residences.

Given the information presented to the issuing judge in the Application for Search Warrant, this Court finds that the judge had a substantial basis for concluding that there was probable cause to believe that contraband or evidence of a crime would be found at 2803 Elmwood Avenue, Kansas City, Missouri.

However, even if probable cause did not exist for the warrant at issue (which this Court does not believe to be the case), the Leon good faith exception would support the admissibility of the evidence seized pursuant to the warrant since it appears that the officers executing the warrant were acting in "objectively reasonable reliance" on a warrant issued by a neutral judge. See United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Murphy, 69 F.3d 237, 241 (8th Cir. 1995), cert. denied, 516 U.S. 1153 (1996). Under this exception, "absent allegations that the [judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or

8

reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998) (quoting Leon, 468 U.S. at 926)). Defendant Riley has not alleged any basis for concluding that the Leon good faith exception to the exclusionary rule does not apply in this case.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Riley's Motion to Suppress (doc #26).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                      */s/ Sarah W. Hays*
                                                      SARAH W. HAYS
                                                      UNITED STATES MAGISTRATE JUDGE