IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-00209-01-CR-W-BP |
| | ) | |
| ERIC T. RILEY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

Defendant has been indicted on one count of being a felon in possession of a firearm. He filed a Motion to Dismiss the Indictment, (Doc. 25), contending that the delay between indictment and his arrest violated his Sixth Amendment right to a Speedy Trial. The Honorable Sarah W. Hays, Chief United States Magistrate Judge for this District, held hearings to receive evidence on November 22, 2016 and January 5, 2017, and she issued a Report on January 25, 2017, recommending that the Motion to Dismiss be denied. (Doc. 51.) Defendant objects to Judge Hays' Report and Recommendation ("the Report"). The Government has not responded to the Objection, and the time for doing so has passed. Local Rule 74.1(b)(2).

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1). In so doing, the Court has reviewed the parties' submissions before the hearing, the transcript from the hearing, the exhibits admitted during the hearing, and Defendant's objections. Having conducted this review, the Court adopts the Report as the Order of the Court and denies the Motion to Dismiss. Given the Report's thoroughness and the fact that (with the exception of the issue

addressed in footnote 2, *infra*) the Court is adopting the Report *en toto*, the Court will only summarize its rationale.

## I. BACKGROUND

In January 2012, Defendant was involved in a narcotic transaction with a confidential informant and an undercover law enforcement officer form the Kansas City Police Department ("KCPD"). On January 21, 2012, a warrant was executed on a house Defendant had been observing entering and exiting. The officers found drugs and guns and Defendant was arrested, but he was apparently released sometime over the ensuing weekend.

Defendant was on probation at the time, having been previously been convicted in Jackson County Circuit Court of second degree drug trafficking and possession of a controlled substance. Thomas McDonald was Defendant's probation officer, and after Defendant was arrested in January 2012 McDonald filed a violation report. He then attempted to locate Defendant. Defendant was supposed to be living with his cousin, Ebony Riley, but she told McDonald that she kicked Defendant out of her house after the arrest.[1] McDonald continued trying to contact Defendant by phone to no avail, and in February 2012 he requested that a warrant be issued for Defendant's probation violations (of not reporting and not living at his designated address).

Defendant was arrested on the warrant on or about July 1, 2012. Ebony Riley's sister, Joyce Bradford, posted bond and Defendant was released. A hearing was set for July 12, but Defendant did not appear so another warrant was issued. This warrant was put into the NCIC system, so any law enforcement officer who stopped Defendant and ran his name through the system would have arrested him. The warrant was withdrawn in January 2015 because Defendant's term of probation expired.

---

[1] Ebony denied making this statement to McDonald, but the Court credits McDonald's testimony.

Meanwhile, Defendant was indicted in this case on July 17, 2012, and an arrest warrant was issued that same day. A copy of the arrest warrant was delivered to the United States Marshal's Service ("USMS") – as is the case with all federal warrants – but the USM took no action on the warrant because KCPD was the lead investigating agency. KCPD did not enter the federal warrant in NCIC – although, the state warrant was already in the system and it can be inferred that no law enforcement officers encountered Defendant because if they had, and if they had run his name through NCIC, they would have learned of the state warrant and arrested him. Detective Troy Schwalm of the KCPD answered affirmatively when asked if any steps were taken to locate Defendant, but when asked to describe those steps his answer was not particularly responsive. (Doc. 48, p. 41.)

On August 13, 2013, the Kansas City Fugitive Task Force – a Task Force comprised of federal and state law enforcement agencies – was delegated the task of finding Defendant. Larry Duncan, a Deputy with USMS, was in charge of the effort. He entered the federal warrant in NCIC. He also engaged in significant efforts to locate Defendant; his efforts included contacting McDonald, consulting various databases looking for information, initiating publicity (through, among other means, the Greater Kansas City Crime Stoppers Tips Network), talking to many of Defendant's family members (including Ebony Riley),[2] and checking addresses that had been attributed to Defendant. In talking to Defendant's family members, Deputy Duncan made it clear why he was looking for Defendant and left his business card so that he could be contacted.

---

[2] Ebony Riley and Joyce Bradford both testified that Defendant lived with Ebony until July 2013, at which point he moved in with Joyce. Joyce testified that Defendant lived with her for approximately five months before moving to Kansas to live with his fiancée/wife. There is no evidence as to whether anyone contacted Joyce. Contrary to Deputy Duncan's testimony, Ebony testified that she never talked to Deputy Duncan. The Court recognizes that the Report does not attempt to resolve the discrepancy between Deputy Duncan's and Ebony's testimony, (Doc. 51, p. 11, n.11), but the Court finds that Deputy Duncan was credible on this point and finds that Deputy Duncan (or someone on the task force) contacted Ebony in an attempt to find Defendant.

3

Eventually, Deputy Duncan exhausted all available leads but he continued checking databases for updated information that might provide more avenues to pursue.

Deputy Duncan was transferred to a different division in October 2014; Deputy Brandon Redetzke took responsibility for this case and continued monitoring databases for new information that would provide a viable line of inquiry. In December 2015, Deputy Redetzke received a tip that Defendant was working at Farmland. Deputy Redetzke went to Farmland and spoke with someone in the HR Department and reviewed the names of Farmland's employees, looking for Defendant's name and the name of an alias Defendant was known to have used. The effort was unsuccessful. In May 2016, Deputy Redetzke received another tip that Defendant worked at Farmland. He again spoke to someone in the HR Department and this time learned that there were two contract companies that employed workers at the facility. Deputy Redetzke contacted those companies and, after reviewing pictures of the employees found one of Defendant; he was working for one of the companies under a cousin's name. This led to Defendant's arrest shortly thereafter; while being transported Defendant made statements indicating that he knew law enforcement had been looking for him and had gone to places where he previously lived.

## II.  DISCUSSION

"The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. To determine whether the right has been violated, courts balance four factors: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of the right; and (4) prejudice. *United States v. Rodriguez-Valencia,* 753 F.3d 801, 805 (8th Cir. 2014) (citations omitted). These are factors, not elements, and the Court must balance these four considerations to determine if a defendant's right to a speedy trial has been violated. *Barker v. Wingo,* 407 U.S. 514, 533 (1972).

The first factor is satisfied, in that the 46 month delay from Indictment to arrest is "presumptively prejudicial," thereby requiring consideration of the remaining factors. *See Rodriguez-Valencia*, 753 F.3d at 805-06 (collecting cases in which shorter delays favored the defendant). However, on balance, the Government is not at fault for the delay. While the efforts to locate Defendant from July 2012 to August 2013 are not established, there is little doubt that reasonable efforts were taken once Deputy Duncan was assigned the task of locating Defendant. In particular, Deputy Duncan spoke with many of Defendant's family members, reviewed databases, conducted stakeouts, and engaged in other lines of investigation. Plaintiff criticizes the investigation because Deputy Duncan never talked to Joyce, but even if this is true the fact remains that he talked to many family members – including Ebony, who he spoke to within a month or two after Defendant moved out of her house. Nonetheless, none of Defendant's family members (including Ebony) provided Deputy Duncan with a means of contacting Defendant. The Court finds that the Government made reasonable efforts to locate Defendant.

Defendant argues that the third factor – whether he invoked his right to a speedy trial – should not be held against him because he did not know that he was charged with a federal offense. The Court disagrees; his statements to Deputy Redetzke establish that Defendant knew that federal marshals were looking for him.

Finally, the Court discerns no prejudice to Defendant. The Supreme Court has described three areas of prejudice that the Sixth Amendment guards against: (1) oppressive pretrial incarceration, (2) the accused's anxiety and concern, and (3) the possibility that the defense will be impaired. *Barker*, 407 U.S. at 432. Absent a specific showing of prejudice, a speedy trial claim will always fail if the Government acted with reasonable diligence, *e.g., Rodriguez-Valencia,* 753 F.3d at 808 (citing *Doggett v. United States,* 505 U.S. 647, 656 (1992)), and

5

despite its misgivings regarding the Government's efforts from July 2012 to August 2013, the Court has found the Government acted with reasonable diligence.

Here, Defendant was not in custody; moreover, any concern over his anxiety is minimized by the fact that he contributed to any such anxiety because he knew he was being sought.[3] This leaves, then, the issue of prejudice. Defendant does not contend that the passage of time has impaired his defense to the charge. Instead, he posits that (1) he cannot seek a reduction of his sentence under § 5K1.1 of the Sentencing Guidelines because any information he could have provided the Government is now stale and useless, (2) he lost the opportunity to complete any sentence that would be imposed, and (3) he has obeyed the law since his indictment and now has a stable job. The Court is not convinced. There is nothing in the Record to indicate that Defendant ever possessed the ability to persuade the Government to file a § 5K.1 motion, and his argument is speculative. Moreover, none of the three forms of prejudice identified by Defendant implicate this inquiry. As the Report aptly states: "Defendant Riley has shown no prejudice to the interests which the speedy trial right was designed to protect." (Doc. 51, p. 14.)

### III. CONCLUSION

For these reasons, the Court **OVERRULES** Defendant's objections, (Doc. 55), **ADOPTS** Judge Hays' Report and Recommendation, (Doc. 51), and **DENIES** the Motion to Dismiss. (Doc. 25.)

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: March _3_, 2017          UNITED STATES DISTRICT COURT

---

[3] Interestingly, if the Court credited Defendant's claim that he did not know about the indictment, there could be no anxiety. *See Rodriguez-Valencia,* 753 F.3d at 808 ("Unaware of the indictment, he did not suffer anxiety or concern before arrest.").

6